UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

LEWIS GOPHER JR.; NANCY JIMMIE,
PARENT TO MINORS M.J., M.J., AND
M.J.; and QUENTIN TOMMIE, and
PROVIDENCE FIRST TRUST
COMPANY, AS GENERAL TRUSTEE
OF THE FOURTH SUCCESSOR
SEMINOLE TRIBE OF FLORIDA
MINORS' PER CAPITA PAYMENT
TRUST AGREEMENT DATED JULY 24,
2018,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE;
TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT; MARC
SPELANE; MICHAEL S. CARRIS; and
MARK LAKE,

    Defendants.

FILED BY _____ D.C.
FEB 25 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## NOTICE OF REMOVAL

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), pursuant to 28 U.C.C. § 1446 and 15 U.S.C. §§ 77p(c) and 78bb(f)(2), hereby gives notice of the removal of the above-captioned matter from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, which is the district embracing where this action is pending. In support of removal, Wells Fargo states:

**Introduction**

1.      Plaintiffs in this case, members of the Seminole Tribe of Florida (the "Tribe"), allege that Wells Fargo, as trustee of four consecutive trusts established to hold gaming revenues for the Tribe's minor members, defrauded the alleged beneficiaries, mismanaged the trusts' investments, and charged unauthorized fees.[1] Plaintiffs seek over $7 million in compensatory damages on their fee claims and over $600 million in compensatory damages on their investment claims, and request leave to seek punitive damages on all claims.

2.      This is the second time Wells Fargo has removed this case to federal court pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77 *et seq.*[2] Wells Fargo first removed the case on March 2, 2016, shortly after it was filed. *See Seminole Tribe of Fla. v. Wells Fargo Bank, N.A.*, Case No. 0:16-cv-60414, 2016 WL 4433651, at *1 (S.D. Fla. May 31, 2016). Wells Fargo contended in the first removal that this lawsuit is a "covered class action" under SLUSA because, among other things, it concerns alleged

---

[1] Wells Fargo was trustee for four separate and distinct trusts: the 2005, 2007, 2010, and 2012 Seminole Tribe of Florida Minors' Per Capita Payment Trust.

[2] "[A] defendant is not precluded from filing a second notice of removal when there is a change of circumstances." *De La Sancha v. Taco Bell of Am., Inc.*, No. 08-81325-CIV, 2008 WL 5111331, at *2 (S.D. Fla. Dec. 4, 2008) (rejecting removal on the grounds that the petition was based on information and circumstances that existed at the time of the initial petition, and not changed circumstances); *see also, Dudley v. Putnam Inv. Funds*, 472 F. Supp. 2d 1102, 1106 (S.D. Ill. 2007) ("If subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible." (quoting *Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp. 2d 838, 842 (S.D.Ill.2006) (quoting 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice & Procedure § 3739 (3rd ed. 1998 & Supp.2005)))).

misrepresentations and omissions of material facts in connection with the purchase or sale of covered securities.[3]

3.  Wells Fargo argued in part that Plaintiffs' allegations concerning Wells Fargo's procurement of investment provisions in the fourth trust (the "2012 Trust") alleged a scheme to defraud Plaintiffs regarding the trusts' investment strategy and resulting purchase and sale of covered securities. *See,* March 2, 2016 Mot. to Dismiss (Case No. 16-cv-60414-WPD, Doc. No. 6), at 6; *see also* April 18, 2016 Brief in Opposition to Plaintiffs' Motion to Remand (Case No. 16-cv-60414-WPD, Doc. No. 21), § I.A.

4.  In response, and to secure remand of the case to state court, Plaintiffs vehemently denied Wells Fargo's contention that their alleged fraud involved Plaintiffs' investment claims. Plaintiffs argued before Judge Dimitrouleas that their allegations of fraud related solely to their claims that Wells Fargo charged improper fees for its administration of the trusts, and did not extend in any way to Plaintiffs' claims that Wells Fargo improperly invested the trusts' assets:

> There's no allegation that any security was bought, sold or held as a result of fraud or deceit.
>
> * * *
>
> [W]e say that there's a fraudulent scheme, but that scheme was with regard to withholding information and failing to disclose the charging of administrative trust fees. It had nothing to do with any particular security. All the fraud allegations relate to the cover-up of the fraudulent

---

[3] The original Complaint named as Plaintiff "Seminole Tribe of Florida, a federally Recognized Indian tribe, on behalf of its current and former minor tribe members who are and were beneficiaries of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement (as amended from time to time)," in addition to John Does 1-3. The First Amended Complaint, filed in September 2016, dropped the Tribe and substituted Louis Gopher, Jr., Shawna Tommie, as parent to A.T., and Quentin Tommie as named plaintiffs. Nancy Jimmie, as parent to M.J., M.J, and M.J was added as a named plaintiff in the February 5, 2018 Second Amended Complaint, and Providence First Trust Company, as General Trustee of the Fourth Successor Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement Dated July 21, 2018, was added in the July 25, 2019 Fourth Amended Complaint. At all relevant times, the various plaintiffs have been represented by the same counsel. For ease of reference, the term "Plaintiffs" has been used throughout this Notice to refer to the various named plaintiffs throughout this litigation.

> administrative fees that were being charged without notice or disclosure. We don't allege anything fraudulent about the decision regarding prudent investment. That's a different claim. **And so the first claim that we bring all together is only about the charging of administrative fees; nothing else about purchasing or selling a security or even holding a security. In fact, if you look at the fraud claim, the fraud claim specifically identifies the fees that were fraudulently overcharged and not properly disclosed. None of these have anything to do with whether or not there was a security involved.**
>
> * * *
>
> **Nowhere with respect to the investment decisions do we allege fraud or deceit.**
>
> * * *
>
> **We haven't even alleged that there was a misrepresentation that was made, much less one that made a difference to the minor beneficiaries' decision to purchase, sell or hold a covered security.**

May 25, 2016 Hr'g. Tr. at 8:25-9:1, 9:11-10:4. 11:16-17, 13:14-18 (emphasis added), excerpted and attached as **Exhibit 1**; *see also* April 1, 2016 Mot. to Remand at 4 ("[T]he Minor Beneficiaries do not allege that the Trustee Bank made any 'misrepresentations or omissions of material fact in connection with a purchase or sale' of any interest in the trust."), attached as **Exhibit 2**.

5.    Accepting this argument, Judge Dimitrouleas granted Plaintiffs' motion to remand. The Court found that SLUSA does not apply to this case because:

> The alleged fraud in the Complaint concerns Defendants' scheme to fraudulently charge millions of dollars in improper administrative fees to the Trust account and then conceal the unauthorized fees from Plaintiffs through issuing account statements that did not disclose the entire universe of charges Defendants used to effectively steal from the trust corpus. **The fraud component of the Complaint relates solely to the bank's hidden fee practices. Plaintiffs' other claims in this action, that Defendants grossly negligently mismanaged the Trust assets by adopting an inappropriate low-growth strategy, and failed to disclose the unauthorized fees and the imprudent investment strategy to the beneficiaries in violation of Florida trust law, do not allege fraudulent conduct.**

*See Seminole Tribe*, 2016 WL 4433651, at *2 (emphases added) (internal citations omitted), attached as **Exhibit 3**.

6. For almost six years following this Court's remand, Plaintiffs prosecuted this case in state court while skirting the restrictions and limitations of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, through their insistence that their fraud allegations against Wells Fargo related only to their fee-based claims and not to their claims alleging improper investment of the trust assets.

7. All of this changed on January 28, 2022, when Plaintiffs asked the state court, for the first time, through a Proposed Order to find that Wells Fargo's motion for summary judgment on the 2012 Trust's investment claims should be denied due to alleged fraud relating to the investments—the very claims Plaintiffs assured this Court did not exist in 2016.[4] *See* January 28, 2022 [Proposed] Order Denying Defendants' Motion for Summary Judgment on Plaintiffs' 2012 Trust Investment Claims, attached as **Exhibit 4**. Plaintiffs did not raise the issue or use the word "fraud" in their summary judgment briefing.

8. On February 4, 2022, the state court entered an order denying Defendants' motion and adopting the following language from Plaintiffs' Proposed Order, finding material issues of fact existed concerning alleged fraud in the procurement of the 2012 Trust's investment provisions:

> **Whether the 2012 change was procured by fraud (Fla. Stat. § 736.0406)** -
> Plaintiffs' [*sic*] argue that if Defendants intentionally decided not to notify the beneficiaries of the 2012 change, that would amount to frau[d.] *See First Union Nat. Bank v. Turney*, 824 So. 2d 172, 190 (Fla.1st DCA 2001) ("[T]he beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.['] A trustee's intentional breach of the duty to supply the information is a frau[d.]"); *see also*, Florida Statute § 736.0406. ("A trustee may not rely on an

---

[4] Presumably, Plaintiffs requested the Court to include the fraud claims in its order to support their pending motion to amend their complaint to seek punitive damages on their $600 million investment claim. Such a result would be the final victory in Plaintiffs' efforts to side-step the PSLRA and its damages limitations.

exculpatory clause procured by frau[d.]"). **A genuine factual dispute exists as to whether the change to the 2012 Trust was procured by frau[d.]**

February 4, 2022 Order, attached as **Exhibit 5** (emphasis added).

9. The investment provisions that Plaintiffs argue were procured by fraud provide as follows:

> The paramount objective of the Grantor is preservation of principal. The return on investments is a secondary consideration. In that context, the Trustee shall limit investments to fixed-income securities with strong credit quality and shall be prohibited from investing in common stocks and other "equity like" investments. The Trustee shall have no duty to diversify under the Prudent Investor Rule as set forth in Section 518.11, Fla. Stat., and shall not be responsible for losses resulting from lack of diversification of the assets into other asset classes.

2012 Seminole Tribe of Florida Minors' Per Capita Payment Trust, Art. VI-A(1), attached as **Exhibit 6.**

10. Plaintiffs' submission of the Proposed Order and the state court's subsequent adoption of it constitute a complete reversal of Plaintiffs' representations to this Court that their fraud-based allegations against Wells Fargo relate only to their fee claims and do not extend to their investment claims. Plaintiffs now argue that the allegedly fraudulently procured investment provisions, which direct the permissible purchases and sales of covered securities, were intended to cover up the investment strategy from 2005 to 2012 and mandate the continuation of the investment strategy from 2012 to 2016. And Plaintiffs seek over $400 million in damages for the investments in covered securities from 2012 to 2016 pursuant to the allegedly fraudulently procured investment provisions. The state court confirmed not only that Plaintiffs *are* alleging fraud in connection with the purchase and sale of covered securities, but also that Plaintiffs' allegations of investment fraud are sufficient to create a "genuine factual

dispute" precluding summary judgment in Defendants' favor on their investments motion.

11.     The state court's order also directly contradicts Judge Dimitrouleas's 2016 finding that Plaintiffs' investment claims "do not allege fraudulent conduct." *Seminole Tribe*, 2016 WL 4433651, at *2. Thus, the allegations in this case, as recently confirmed by the state court, no longer support the sole basis for this Court's 2016 remand.

12.     Following the February 4, 2022 Order, there can be no doubt that SLUSA applies to Plaintiffs' claims in this case. Thus, Wells Fargo's removal of the case is proper and timely and Plaintiffs' claims should be dismissed under SLUSA.[5] And the factual findings in the February 4, 2022 Order show that Plaintiffs have no basis to seek remand.

13.     All Defendants consent to removal. Their written consent is attached as **Exhibit 7**.

14.     In accordance with 28 U.S.C. § 1446(d), Wells Fargo will provide a copy of this Notice of Removal to the clerk of the Seventeenth Judicial Circuit in and for Broward County, Florida. That notice, without exhibits, is attached as **Exhibit 8**. Also, in accordance with 28 U.S.C. § 1446(d), Wells Fargo will serve written notice of the filing of this Notice of Removal upon Plaintiffs through their attorneys of record.

---

[5] Pursuant to 28 USC § 1446 (b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one ***which is or has become removable***." (emphasis added).

15. In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, and orders" received by Wells Fargo are attached as **Exhibit 9**.[6]

16. This case is properly removed to this Court because to date, the case has been litigated in Broward County, Florida, which is located in this district. *See* 28 U.S.C. § 89(c).

17. No statement or omission in this Notice shall be deemed a waiver of any defense or an admission of any of the allegations made or damages sought in the complaint.

### Removal Under SLUSA

18. Plaintiffs' action is removable to this Court, and their claims should be dismissed, pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77 *et seq.*

19. Removal under SLUSA requires four elements to be met: "(1) the suit is a covered class action, (2) the plaintiffs' claims are based on state law, (3) one or more covered securities has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact in connection with the purchase or sale of such security." *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir. 2003) (internal quotation marks and emphasis omitted). All four elements are satisfied here, with the February 4, 2022 Order establishing the fourth element for the first time.

***The Lawsuit Is a Covered Class Action***

---

[6] Certain filings required by 28 U.S.C. § 1446(a) to be appended to this Notice of Removal are deemed confidential by the parties pursuant to a protective order and, as such, were filed under seal in the state court action. Wells Fargo has appended redacted versions of those documents as Exhibit 9 to this Notice and, pursuant to the Court's procedure, will seek leave to file under seal unredacted versions containing the confidential information.

20. SLUSA defines "covered class action" to include:

> any single lawsuit in which—(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77p(f)(2)(A)(i)(I); 15 U.S.C. § 78bb(f)(5)(B)(i)(I); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006) ("A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people.").

21. The Fourth Amended Complaint seeks damages on behalf of all current and former alleged beneficiaries of the trusts ("Alleged Beneficiaries").[7,8] *See generally* 4th Am. Compl., attached as **Exhibit 11**; *see also, e.g., id.* ¶ 1 ("The case involves Defendants' breach of multiple fiduciary duties they owed as Former Trustee, or as agents and employees of the Former Trustee, to the beneficiaries, including the Minor Plaintiff Beneficiaries, of a common law trust (the 'Trust' or 'Minors' Trust')"); ¶ 147 ("Defendants had a duty to invest the Trust corpus prudently on behalf of the Trust beneficiaries, including the Minor Plaintiff Beneficiaries, and as a result owed them a fiduciary duty."); ¶ 152 ("The breach of the fiduciary duty resulted in and

---

[7] Defendants have argued that, given the Minors' Trust's unique status as a rabbi-like trust, the Grantor Tribe is the beneficial owner of the Trust assets until the distribution of such assets. *See, e.g.,* Defendant's October 19, 2019 Motion for Summary Judgment on Counts II and VII, § VI, at 25-29. This argument has been opposed by Plaintiffs and rejected by the state court to date.

[8] Plaintiffs seek damages on behalf of well over 50 Alleged Beneficiaries, *see infra,* ¶22, and thus well over the requisite threshold to be a "covered class" under SLUSA. Notably, Plaintiffs seek over $4 million in direct individual damages for 174 tribal members who, at the time of the original Complaint's filing, were no longer associated with the Trust (including, Quentin Tommie, who is "an adult Tribal Member who used to be a beneficiary but received his final distribution. . . . " 4th Am. Compl., ¶ 5). *See,* June 1, 2020 Supp. to Rep. of June 17, 2019 of Robert A. Korajczyk, attached as **Exhibit 10**.

was the proximate cause of the loss of Trust corpus and the damages suffered by the Trust beneficiaries, including the Minor Plaintiff Beneficiaries.").

22. Moreover, Plaintiffs admit under oath to seeking damages on behalf of all current and former minor Tribe members who are and were Alleged Beneficiaries of the trusts. *See, e.g.,* Gopher Dep. Tr. dated February 28, 2019, excerpted and attached as **Exhibit 12**, at 48:10–12, 49:16-21, 57:20–24, and 198:25–199:7; Jimmie Dep. Tr., excerpted and attached as **Exhibit 13**, at 90:9-11, and 39:18-40:4; Tommie Dep. Tr., excerpted and attached as **Exhibit 14**, at 47:22-48:6; and 115:24-116:2.

23. As of December 2015, shortly before the original complaint was filed, the number of minor beneficiaries of the trust was 2,366. *See* **Exhibit 15** (Decl. of Terri Johnson, ¶ 6).[9]

24. Additionally, the Fourth Amended Complaint does not distinguish between the Plaintiffs (or other Alleged Beneficiaries) concerning questions of law or fact; they are grouped together, asserting the same allegations and claims against every Defendant. *See generally* **Exh. 11.**, *see also, e.g., id.* ¶ 123 ("[N]othing about the Trust's beneficiaries, including the Minor Plaintiff Beneficiaries', circumstances counseled against diversification."); and ¶ 148 ("Defendants had a duty to invest the Trust corpus prudently on behalf of the Trust beneficiaries, including the Minor Plaintiff Beneficiaries, and as a result owed them a fiduciary duty."). Thus, the Fourth Amended Complaint alleges issues of law or fact common to all Plaintiffs.

---

[9] A removing party may "submit its own evidence in order to satisfy the jurisdictional requirements of removal." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010). This means that the removing party "may introduce its own affidavits, declarations, or other documentation." *Scenic Health All., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 14-62900, 2015 WL 4999640, at *2 (S.D. Fla. Aug. 24, 2015) (internal alterations omitted) (quoting *Pretka*, 608 F.3d at 755).

25. Similarly, the February 4, 2022 Order does not distinguish between Plaintiffs (or the Alleged Beneficiaries) concerning questions of law or fact. Again, they are grouped together asserting the same allegations and claims against every Defendant. *See generally* **Exh. 5** (identifying as factual issues "whether the minor beneficiaries received notice of the planned change," ¶ 3(a), and, relatedly, "if Defendants intentionally decided not to notify the beneficiaries of the 2012 change, that would amount to frau[d.]" ¶ 3(d).) Thus, the February 4, 2022 Order recognizes issues of law or fact common to all Plaintiffs (and the represented Alleged Beneficiaries).

26. Because Plaintiffs seek damages on behalf of *all* present and former Alleged Beneficiaries of the trusts, including at least 174 tribal members who are no longer associated with the trusts, the present action is a "covered class action" under SLUSA.

***Plaintiffs' Claims Are All Based on State Law***

27. "[T]he parties agree" that "Plaintiffs' claims are based on state law." *Seminole Tribe*, 2016 WL 4433651, at *2.

***The Lawsuit Involves the Purchase and Sale of Covered Securities***

28. A "covered security" is one that is "listed, or authorized for listing, on a national securities exchange" or is issued by an "investment company." 15 U.S.C. § 78bb(f)(5)(E); *see also Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1064 (2014). This lawsuit involves claims originating from the purchase, sale, and maintenance of securities issued by an "investment company." *See* 15 U.S.C. § 80a-3 (defining an "investment company"). The trusts included, and continues to include, such securities, including government bonds and funds and investment-grade corporate bonds. *See, e.g.*, July 24, 2018 Lake Dep., at 435:18–19, attached as **Exhibit 16**; December 18, 2018 Frith Dep., at 48:25–50:6, attached as **Exhibit 17**; *see also*

October 15, 2019 Schanzenbach Dep., at 59:16–60:8 attached as **Exhibit 18**. In addition, the Fourth Amended Complaint's allegations are focused on the trusts' purchase, sale, and maintenance of the mutual-fund products. *See, e.g.*, **Exh. 11** ¶¶ 121-130 (alleging that Wells Fargo "failed to diversify the Trust investments by not investing in asset classes other than cash equivalents and short-term government bonds"); *see also id.* ¶ 96 (acknowledging the Trust's investment in mutual funds, while discussing the fees stemming "from the various mutual funds in which the Minors' Trust funds were invested during the period from June 2009 to April 2015"). The Eleventh Circuit has definitively determined that mutual funds are "covered securities" under SLUSA. *See Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1351 n.2 (11th Cir. 2008) ("Because mutual funds are issued by investment companies registered under the 1940 Act, they qualify as 'covered securities' under SLUSA." (internal citation omitted)). Accordingly, this case involves the purchase and sale of covered securities.

***Plaintiffs Allege Misrepresentations and Omissions of a Material Fact in Connection with the Purchase or Sale of a Covered Security***

29.  To satisfy SLUSA's "in connection with" requirement, the allegedly wrongful conduct need only "'coincide' with a securities transaction—whether by the plaintiff or someone else." *Dabit*, 547 U.S. at 85. As stated in the February 4, 2022 Order, the fraud allegations here coincide with the purchase and sale of covered securities.

30.  Since Plaintiffs filed their original complaint, they have claimed that, starting in mid-2011, Defendants intentionally concealed the past and future investment strategy involving the purchase and sale of covered securities for the trusts and the proposed investment provisions for the 2012 Trust. *See* **Exh. 11** ¶ 26 ("[T]hroughout the 2005-2012 period, the Former Trustee . . . failed to invest in equities or other equity-like investments . . . . Then in 2012 Wells Fargo, in an effort to evade responsibility for seven years of irresponsible investing, insisted on changing

the Trust's investment provisions . . . without ever bringing the changes . . . to the attention of the Minor Plaintiff Beneficiaries."); *see also, e.g.,* Compl., attached as **Exhibit 19**, ¶ 40 ("Defendants "failed to inform the minor beneficiaries and their guardians of any important adjustment being considered or implemented in investment or other management strategy"), and ¶ 103 ("Trustee made significant changes to . . . the investment portfolio. . . . [h]owever . . . [Trustee] never informed any of the minor beneficiaries of the fraudulent fees or dramatic change in prudent investment strategies."). Plaintiffs were careful to avoid using the word "fraud" with respect to investments and repeatedly limited their fraud claims to the allegedly improper fees.

31. Only upon Plaintiffs' filing of the Proposed Order and the Court's adoption of it could it be ascertained that—notwithstanding Plaintiffs' prior representations in both federal and state court—the alleged misrepresentations and omissions also coincide with the purchase and sale of covered securities.[10] Specifically, Plaintiffs asserted, and the state court found pursuant thereto, that:

    a. Defendants may not have notified the Alleged Beneficiaries of the proposed change to the 2012 Trust language, and that such lack of notice might render the 2012 Trust's exculpatory language unenforceable. *See,* **Exh. 5**, ¶ 3(a).

    b. A reasonable fact finder could find that the exculpatory language in the 2012 Trust was not fair. *See id.,* ¶ 3(b).

    c. A reasonable fact finder might conclude that certain evidence regarding the proposed change to the 2012 Trust language might amount to admissions of past wrongdoings and investment mismanagement, and that the change in the

---

[10] Hence, removal is timely. *See, supra,* ¶ 12 & n.5.

        2012 Trust language specifically served to cover up Defendants' prior actions. *See, id.*

    d.    Had Defendants purposefully withheld notice of the proposed changes to the 2012 Trust language, such omission amounts to fraud, and therefore, a genuine issue of material fact exists as to whether the changes to the 2012 Trust language – language specifically related to the investment of covered securities – were fraudulently obtained. *See, id.*, ¶ 3(d).

32.    The Fourth Amended Complaint alleges these purported misrepresentations and omissions were material to Plaintiffs' and their representatives' decisions to (i) purchase, sell, and maintain covered securities, and (ii) allow implementation of the investment provisions mandating the investment strategy in covered securities of which Plaintiffs now complain. Had "the Trust's beneficiaries, including the Minor Plaintiff Beneficiaries, . . . been informed of the proposed change to the Trust instrument, they would have taken action to prevent its adoption." **Exh. 11** ¶ 62.

33.    Moreover, the trust agreements gave the guardians of the Alleged Beneficiaries and the Tribe as their sovereign representative the power to direct the trusts' investments:

    a.    "The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more investment alternatives as are approved by Tribal Council or its Designee from time to time. In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion." **Exh. 11**, Exhibits A, C, and F (2005, 2007 and 2010 Seminole Tribe of Florida Minors' Per Capita Trust Agreements, respectively), Art. VI-D;

b. "Grantor may, at any time, and from time to time, demand that the Trustee transfer to the Grantor such asset or assets of any separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value." **Exh. 11**, Exhibits A, C, F, and I (2005, 2007, 2010 and 2012 Seminole Tribe of Florida Minors' Per Capita Trust Agreements, respectively), Art. I;

c. "Transfer to New Minor's Trust. In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust." *Id.*, Art. V.A (vesting the Tribe with the power to transfer assets and investments to a new trust with new investment terms, which it exercised in 2012).

d. "The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law." *Id.*, Art. III.B.2 (vesting the Tribe with the

sovereign power to legislate investment terms, *see, e.g.*, Tribal Ordinances No. ORD-02-05 and C-01-13, attached as **Exhibits 20 and 21** (the Tribe exercising its sovereign power as representative of the Alleged Beneficiaries to mandate that trusts' assets be preserved and protected), and Tribal Resolution C-137-12, attached as **Exhibit 22** (the Tribe exercising its sovereign power as representative of the Alleged Beneficiaries to mandate that the trustee administer the 2012 Trust pursuant to its investment provisions).

34. Plaintiffs' investment fraud claims, as newly stated in the February 4, 2022 Order, more than "coincide" with the purchase, sale, or maintenance of trust securities. The 2012 Trust's investment provisions and their mandated investment strategy, which Plaintiffs allege were hidden, concealed, and connived by Wells Fargo, knowing them to be improper, concern the purchase, sale, or holding of government bonds and funds and investment-grade corporate bonds—"covered securities." This is more than sufficient to satisfy the "in connection with" requirement. *See, e.g.*, *Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP, 2006 WL 3408043, at *7 (S.D. Fla. May 10, 2006) (holding that this element was met based on allegations that "Wachovia schemed to mislead trust beneficiaries about the funds in which Wachovia intended to invest the trust assets, as well as the fees and expenses associated with those transactions").

***SLUSA Requires Removal of This Action***

35. As demonstrated above, all the SLUSA requirements are met in this action, and SLUSA removal and subsequent dismissal is required.

**WHEREFORE**, pursuant to 28 U.S.C. § 1446 and 15 U.S.C. §§ 77p(c) and 78bb(f)(2), Wells Fargo files this Notice of Removal and removes the civil action to the United States District Court for the Southern District of Florida.

Dated: February 25, 2022

Respectfully submitted,

By: /s/ *Michael W Marcil*
GUNSTER, YOAKLEY & STEWART, P.A.
George LeMieux (FBN 16403)
Primary e-mail: GLeMieux@gunster.com
Secondary e-mail: mzayas@gunster.com
Michael Marcil (FBN 91723)
Primary e-mail: MMarcil@gunster.com
Secondary e-mail: lvanegas@gunster.com
Jorge Guttman (FBN 15319)
Primary e-mail: JGuttman@gunster.com
Secondary e-mail: mmotola@gunster.com
Las Olas Centre
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301-4206
Telephone: (954) 462-2000
Facsimile: (954) 523-1722

*Counsel for Defendants Wells Fargo Bank, N.A., Debra Charbonnet, Thomas Joyce, Terri Johnson, Melissa Lader Barnhardt, Kim Scott, Marc Spelane, Michael S. Carris, and Mark Lake*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25<u>th</u> day of February 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, and served on all counsel of record on the attached Service List via E-mail.

By: /s/ *Michael W Marcil*
Michael W. Marcil, Esq.

**SERVICE LIST**

William R. Scherer, Esq.
Steven H. Osber, Esq.
Jessica L. Kopas, Esq.
CONRAD & SCHERER, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel: (954) 462-5500
Fax: (954) 463-9244
wscherer@conradscherer.com
sosber@conradscherer.com
jkopas@conradscherer.com
jlkpleadings@conradsherer.com
emorejon-daher@conradsherer.com
*Counsel for Plaintiffs*

Eric Hager, Esq.
Patrick T. O'Neill, Esq.
CONRAD & SCHERER, LLP
Edificio Officenter, Suite 304
Avendia Pampite S/N y Chimborazo – Cumbayá
Quito, Ecuador 170901
EHager@conradscherer.com
jmaganini@conradscherer.com
poneill@conradscherer.com
*Counsel for Plaintiffs*

William O. L. Hutchinson, Esq.
(admitted *pro hac vice*)
whutchinson@mcguirewoods.com
Mark W. Kinghorn, Esq.
(admitted *pro hac vice*)
mkinghorn@mcguirewoods.com
McGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel. (704) 343-2000
Fax (704) 343-2300

Larissa LPC Sneathern, Esq.
(admitted *pro hac vice)*
lsneathern@mcguirewoods.com
323 Second Street, SE, Suite 700
Charlottesville, VA 22902
Telephone: (434) 977-2593
Facsimile: (434) 980-2255

United States District Court
Southern District of Florida

Case Number: _____

# SUPPLEMENTAL ATTACHMENT(S)

Please refer to supplemental "file" in the division where the Documents/Exhibits were submitted and filed.

Division Document/Exhibits Submitted and Filed: ___FTL___

These Documents/Exhibits must **not** be placed in the "temp chron file".

---

Documents/Exhibits Retained in Supplemental Files  **(Scanned)**

___ • Poor quality scanned images (i.e. Handwritten, Photographs)

___ • Surety bonds

___ • Bound extradition papers

---

Documents/Exhibits Retained in Supplemental Files  **(Not Scanned)**

___ • CD, DVD, USB drive. (i.e. Audio/Visual)

\* 2 Boxes of Exhibits

\*\* All other documents and documentary exhibits are part of the CM/ECF Case Record in pdf format.

Date: 2/25/22

Revised: 2/20/2019